763 So.2d 429 (2000)
FLORIDA FARM BUREAU GENERAL INSURANCE COMPANY, Appellant,
v.
INSURANCE COMPANY OF NORTH AMERICA, etc., Appellee.
No. 5D99-943.
District Court of Appeal of Florida, Fifth District.
June 9, 2000.
Rehearing Denied August 1, 2000.
*431 Lester A. Lewis and James R. Evans, Daytona Beach, for Appellant.
Elizabeth C. Wheeler of Wheeler & Wilkinson, LLP, Orlando, for Appellee.
SAWAYA, J.
The appellant, Florida Farm Bureau General Insurance Company ("FFB"), appeals an order dismissing with prejudice its complaint against the appellee, Insurance Company of North America ("INA"). FFB contends that the trial court erred in dismissing its complaint for failure to state a cause of action for subrogation and indemnification; in concluding that certain policy exclusions applied; and in not allowing FFB leave to amend its complaint. INA argues that the court properly dismissed the complaint and that a release provides additional grounds to support dismissal.
The underlying cause of action arose when Bradley Lamar Preston was killed as a result of an automobile accident wherein he was struck by a tractor trailer while walking along a roadway near property owned by Myron Kirton. At the time of the accident, an "open burning agricultural fire" was being conducted on the property by Myron's son, Kenneth Kirton, who was a licensed forester. The decedent's estate filed suit against the truck driver, the owner of the truck, Myron as owner of the property, and Kenneth for his alleged negligent conduct of the fire. The suit alleged that the accident was caused, at least in part, by a lack of visibility attributable to smoke and debris which emanated from the fire and engulfed the roadway.
Myron was insured by FFB, and Kenneth was insured by INA under a farm liability policy. INA initially undertook the defense of Kenneth but subsequently terminated its defense, claiming that there was no coverage for Kenneth under its policy for the incident. FFB assumed the defense of Kenneth and settled the claim of the decedent's estate at mediation for $150,000.00. FFB obtained a release as to Myron, Kenneth, FFB, and INA. Kenneth assigned his rights under his policy to FFB. In the assignment, FFB agreed not to pursue any action against Kenneth or Myron, and Kenneth agreed to "indemnify [FFB] for the amount of the settlement paid by [FFB] on behalf of Myron Kirton and Kenneth Kirton or, alternatively, to pay according to the apportionment of fault between Myron and Kenneth." FFB also agreed not to pursue Kenneth's indemnity obligation in the event FFB was unsuccessful in its suit against INA.
FFB subsequently demanded that INA indemnify it for the settlement amount. INA refused to reimburse FFB for any amount of settlement, and FFB filed suit against INA on its own behalf and as assignee of Kenneth. The complaint contained three counts which sought 1) determination of coverage for Kenneth under the INA policy and a determination that INA had a duty to indemnify FFB as assignee of Kenneth; 2) a declaratory judgment against INA to establish coverage for the negligence of Kenneth and to establish INA's duty to indemnify FFB; and 3) recovery based on equitable subrogation. Attachments to the complaint included the settlement agreement and assignment *432 of Kenneth's rights to FFB; the complaint filed by the decedent's estate; the release by the estate in favor of Myron, Kenneth, INA, and FFB; and the INA policy.

I. The Exclusion Provisions
The trial court held that dismissal with prejudice was warranted based on the "non-listed location" and "pollution" exclusion clauses contained in INA's policy. INA argues in these proceedings that the "business" exclusion also applies. Although the trial court did not rule on the applicability of this exclusion, INA contends that it provides additional grounds to support the lower court's order of dismissal with prejudice.
Policy exclusions are generally pled as affirmative defenses. See Peninsular Life Ins. Co. v. Hanratty, 281 So.2d 609 (Fla. 3d DCA 1973); cf. Fla. R. Civ. P. 1.110(d) ("In pleading to a preceding pleading a party shall set forth affirmatively... any ... matter constituting an avoidance or affirmative defense."). A defense based on a policy exclusion usually raises issues of fact that should not be decided pursuant to a motion to dismiss for failure to state a cause of action. See Cintron v. Osmose Wood Preserving, Inc., 681 So.2d 859, 860 (Fla. 5th DCA 1996) ("In reviewing a motion to dismiss a complaint, the trial court must make its decision solely upon questions of law.").
The most common and appropriate pre-trial motion to raise the issue of whether a particular exclusion clause in an insurance policy applies to prohibit recovery is a motion for summary judgment. A motion to dismiss should not be used "to determine issues of ultimate fact" and "may not act as a substitute for summary judgment." Roberts v. Children's Med. Servs., 751 So.2d 672, 673 (Fla. 2d DCA 2000); see McWhirter, Reeves, McGothlin, Davidson, Rief & Bakas, P.A. v. Weiss, 704 So.2d 214 (Fla. 2d DCA 1998); Bolz v. State Farm Mut. Auto. Ins. Co., 679 So.2d 836 (Fla. 2d DCA 1996); see also Cintron. However, the trial court found that the complaint filed by FFB contains specific allegations that establish as a matter of law that the "pollution" and "non-listed location" exclusions apply to prohibit coverage.
We are aware of the rule that "[a]ny exhibit attached to a pleading shall be considered a part thereof for all purposes," Florida Rule of Civil Procedure 1.130(b), and that "[i]f an attached document negates the pleader's cause of action... the plain language of the document will control and may be the basis for a motion to dismiss." Health Application Sys., Inc. v. Hartford Life & Accident Ins. Co., 381 So.2d 294, 297 (Fla. 1st DCA 1980); accord Ginsberg v. Lennar Fla. Holdings, Inc., 645 So.2d 490 (Fla. 3d DCA 1994). Thus, the applicability of policy exclusions contained in a policy attached as an exhibit may be raised by a motion to dismiss when the allegations of the complaint clearly show that the exclusions do apply. See Bolz. The issue we must resolve is whether the complaint contains sufficient allegations that show as a matter of law that the particular exclusions at issue negate coverage and warrant dismissal of the action with prejudice.

A. The Non-Listed Location Exclusion
The pertinent provisions of the "non-listed location" exclusion in INA's policy state that the "insurance does not apply to ... `[b]odily injury' or `property damage' arising out of ... [a]n act or omission in connection with any location (other than an `insured location') that is rented to, or owned or controlled by, the `insured.'" The trial court based its decision to dismiss on an allegation contained in FFB's complaint that Kenneth "was solely responsible for conducting the prescribed burn on the property of Myron Kirton, was solely responsible for monitoring and controlling the burn and, when the burn was completed, was solely responsible for extinguishing it." The court then *433 applied a very broad interpretation of the term "control" and reasoned that "Kenneth controlled the non-listed, uninsured property to the extent necessary to conduct, manage, and restrict the burn." However, the complaint also specifically alleges that "[t]he property where the burn occurred was owned, controlled and possessed by Myron Kirton" and that Kenneth "did not own, possess or control the property where the burn occurred to the exclusion of the record title owner."
In reviewing the propriety of an order of dismissal, this court is obligated to consider the allegations in the complaint as true and in the light most favorable to the pleader. See Londono v. Turkey Creek, Inc., 609 So.2d 14 (Fla.1992); Cintron; Mettler, Inc. v. Ellen Tracy, Inc., 648 So.2d 253 (Fla. 2d DCA 1994); Stackhouse v. Emerson, 611 So.2d 1365 (Fla. 5th DCA 1993). Considering the allegations in the light most favorable to FFB, the complaint alleges that Kenneth controlled the fire, not the property where it occurred. Therefore, dismissal based on this exclusion was improper.

B. The Pollution Exclusion
The pertinent provisions of the "pollution exclusion" in INA's policy state that insurance is not provided for:
"[b]odily injury" and "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:
(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any "insured;"
* * *
... or
(d) At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations:
i) If the pollutants are brought on or to the premises, site or location in connection with such operation by such "insured," contractor or subcontractor....
The policy also provides that these exclusion provisions "do not apply to `bodily injury' or `property damage' arising out of heat, smoke or fumes from a hostile fire."[1] The term "hostile fire" is defined in the policy as "one which becomes uncontrollable or breaks out from where it was intended to be."
The trial court ruled that dismissal based on this exclusion was appropriate because the complaint alleged that Kenneth was solely responsible for conducting, monitoring, controlling, and extinguishing the fire and because "[t]he pollutant that allegedly caused the accident was the smoke that was created as a result of an improper extinguishment of the burn." FFB contends that the pollution exclusion does not apply because the smoke and debristhe alleged pollutants in this casewere not brought on or to the premises as required by the exclusion provisions. FFB further contends that the fire became uncontrollable and resulted in a hostile fire that exempts this case from the pollution exclusion.
Our review of the complaint leads us to conclude that the allegations contained therein regarding the fire and how it was *434 conducted are not sufficient to establish as a matter of law that the pollution exclusion applies to prohibit coverage. Rather, the allegations raise issues of fact that should not be resolved by a motion to dismiss.

C. The Business Exclusion
The trial court noted in its order that it did not find it necessary to consider the applicability of the business exclusion in INA's policy since it found that coverage was negated by the "non-listed location" and "pollution" exclusions. However, INA argues on appeal that this exclusion provides an independent basis for affirmance of the order of dismissal. Therefore, we will address the issue of whether dismissal with prejudice was appropriate based on the business exclusion. Cf. Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 645 (Fla.1999) (noting that appellate court "is not limited to consideration of the reasons given by the trial court but rather must affirm the judgment if it is legally correct regardless of those reasons").
The business exclusion in INA's policy provides:
This insurance does not apply to:
* * *
"Bodily injury" or "property damage" arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owned, or implied to be provided because of the nature of the "business."
The policy defines "business" as "a trade, profession, occupation, enterprise or activity, other than `Farming,' which is engaged in for the purpose of monetary or other compensation." "Farming," which is excluded from the "business" definition, is also defined in the policy:
"Farming" means the operation of an agricultural or aquacultural enterprise, and includes the operation of roadside stands, on your farm premises, maintained solely for the sale of farm products produced principally by you. Unless specifically indicated in the Declarations, "farming" does not include:
a. Retail Activity other than that described above; or
b. Mechanized processing operations.
INA's argument that this exclusion negates coverage as a matter of law is based on the allegation in FFB's complaint that Kenneth, "a licensed forester according to applicable Florida statutes and regulations, conducted an open burning agricultural fire on the property of Myron Kirton located in Volusia County, Florida. This fire was permitted by the Division of Forestry pursuant to Chapter 590, commonly known as the `Florida Prescribed Burning Act.'" INA argues that section 590.026, Florida Statutes (1993),[2] and applicable code regulations were incorporated by reference in the complaint and "unequivocally demonstrate that Kenneth conducted the burn not as Myron's son but in connection with his `business' as a forester and Certified Burn Manager."
However, in order for this exclusion to apply the actions of Kenneth in this particular case must have been "engaged in for the purpose of monetary or other compensation" and must involve an activity other than farming. There is no allegation in the complaint that Kenneth received any compensation of any kind for conducting this fire. Furthermore, the allegation in the complaint that Kenneth conducted an "open burn agricultural fire," viewed in the light most favorable to FFB, raises the factual issue of whether the fire was for agricultural or farming purposes. Therefore, whether this exclusion applies to negate coverage in this case is an issue of fact which should not be resolved by a *435 motion to dismiss for failure to state a cause of action.

II. Indemnity
FFB contends that it properly pled a cause of action against INA for common law indemnity. INA argues that dismissal was appropriate because attachments to FFB's complaint show that Myron was actively negligent. The attachments include the assignment and the complaint filed in the underlying action by the decedent's estate which contains allegations of active negligence on the part of Myron.
In order to properly plead a cause of action for common law indemnity, the party seeking indemnity must allege in his complaint 1) that he is wholly without fault; 2) that the party from whom he is seeking indemnity is at fault; and 3) that he is liable to the injured party only because he is vicariously, constructively, derivatively, or technically liable for the wrongful acts of the party from whom he is seeking indemnity. See Gate Lands Co. v. Old Ponte Vedra Beach Condominium, 715 So.2d 1132 (Fla. 5th DCA 1998).
Our review of the complaint reveals that these basic pleading requirements were met by FFB but that the attachments contain conflicting allegations concerning the active negligence of Myron. However, we find that the trial court and INA place too much emphasis, on the attached complaint filed by the injured party because it consists only of unproven allegations. Furthermore, although the assignment briefly refers to apportionment of fault between Myron and Kenneth, the provisions of the assignment specifically state that "based upon the lack of active involvement of Myron Kirton, Kenneth Kirton agrees that his active, affirmative conduct in conducting the prescribed burn constituted the basis for [FFB] entering into and paying a settlement of $150,000 on behalf of Myron Kirton and Kenneth Kirton." Although we agree that dismissal was appropriate because the complaint and its attachments contain conflicting allegations,[3] we find that leave to amend should have been granted. See Gate Lands.

III. Subrogation
Count III of the complaint filed by FFB is captioned "Claim For Equitable Subrogation," and FFB argues in its initial brief that it "is entitled to recover on the basis of equitable subrogation against INA." *436 However, it is unclear whether FFB is attempting to allege a cause of action for equitable subrogation or for indemnity. We will treat count III as an attempt to plead a cause of action for equitable subrogation because that is what FFB argued or attempted to argue in its brief and during oral argument.
A cause of action for equitable subrogation arises when a person "pays a debt due by another under such circumstances that he is, in equity, entitled to the security or obligation held by the creditor whom he has paid." West Am. Ins. Co. v. Yellow Cab Co., 495 So.2d 204, 206 (Fla. 5th DCA 1986); accord Wolf v. Spariosu, 706 So.2d 881 (Fla. 3d DCA), cause dismissed sub nom. Maysonet Landscape Co. v. Wolf, No. 92,980, ___ So.2d ___ (Fla. May 20, 1998).
In Dade County School Board v. Radio Station WQBA, 731 So.2d 638, 646 (Fla. 1999), the supreme court described West American as "the prototypical case to which application of equitable subrogation in a tort context should be limited."[4] In West American, the injured party sued two defendants for negligence. One defendant, who was subsequently absolved of any liability, settled with the injured party and obtained a release for both defendants. The court held that the defendant who paid the settlement was entitled to seek subrogation against the other defendant who was at fault and who refused to negotiate with the injured party.
In the instant case, FFB does not allege that it is subrogated to the rights of the injured party. Thus, FFB has failed as a matter of law to allege a cause of action for equitable subrogation. Therefore, the trial court in the instant case was correct in dismissing count III. However, leave to amend should have been granted. See Gate Lands; Wilson v. News-Press Publ'g Co., 738 So.2d 1000, 1001 (Fla. 2d DCA 1999) ("[A] court should not dismiss a complaint with prejudice if it is actionable on any ground.").

IV. The Release
INA argues that the release executed by the decedent's estate releasing Kenneth, Myron, FFB, and INA from liability for the underlying action in exchange for payment of the settlement amount by FFB prohibits FFB from pursuing its indemnity claim against it. INA further argues that the release was executed prior to execution of the settlement agreement and assignment and that when the assignment was executed, nothing was assigned because the release freed INA from any liability under its policy.
FFB argues that INA denied coverage and refused to defend Kenneth just before the scheduled mediation conference and that Kenneth was left to his own devices to extricate himself from liability. FFB stepped in and undertook the defense of Kenneth to resolve the underlying action by settlement to protect its interests as insurer of Myron in the event that Myron was found liable for the decedent's death. The settlement specifically provides that "Kenneth Kirton agrees to indemnify [FFB] for the amount of the settlement paid by [FFB] on behalf of Myron Kirton and Kenneth Kirton or, alternatively, to pay according to the apportionment of fault between Myron Kirton and Kenneth Kirton." FFB argues that under these circumstances, the release does not relieve INA of liability because there was never an intent to release INA from FFB's right *437 of indemnity against INA when the assignment from Kenneth to FFB and the settlement agreement were executed.
We find that the allegations concerning the circumstances surrounding the settlement and execution of the release raise issues of fact whether the parties intended to release INA from liability.[5] Furthermore, the issue of the release is an affirmative defense that should properly be raised by INA in its answer to the complaint. See Fla. R. Civ. P. 1.110. Whether it relieves INA of liability in this case is an issue more appropriately resolved by a motion for summary judgment or at trial.

V. Conclusion
In sum, we conclude that the trial court erred in dismissing FFB's complaint with prejudice based on the "non-listed location" and "pollution" exclusions. Moreover, neither the "business" exclusion nor the release provides a basis for dismissal. Additionally, FFB should have been granted leave to amend the counts for indemnity and equitable subrogation.
REVERSED and REMANDED for further proceedings consistent with this opinion.
PETERSON, J., and ORFINGER, M., Senior Judge, concur.
NOTES
[1] The trial court held that dismissal was appropriate because the complaint failed to specifically allege that the burn was a "hostile fire." In order to state a cause of action based on an insurance policy, the complaint need not negate the application of each and every exclusion contained in the policy. See 18A Mark S. Rhodes, Couch on Insurance 2d § 76:27 (rev. ed.1983). This general rule is based on the requirement that a pleading that sets forth a claim for relief contain "a short and plain statement of the ultimate facts showing that the pleader is entitled to relief." Fla. R. Civ. P. 1.110(b). Hence, the failure of FFB to allege that the fire was hostile is not fatal to its claim.
[2] This statute provides definitions for "prescribed burning" and "certified prescribed burn manager" and sets forth the requirements for prescribed burning.
[3] INA also argues that dismissal of the indemnification claim with prejudice was proper because FFB did not allege sufficient facts to show 1) the existence of an identifiable agreement between FFB and INA preserving a right to seek indemnification or 2) that it disclaimed liability or coverage for Kenneth. The trial court in its order relied on the decision in Airmanship, Inc. v. United States Aviation Underwriters, Inc., 559 So.2d 89 (Fla. 3d DCA 1990), as authority to support dismissal. The court in Airmanship held that "[a]n insurer waives its right to subrogation when it neither obtains an agreement preserving its right to indemnification, nor in any way disclaims its liability." 559 So.2d at 92 (emphasis omitted). However, the court also held that failure to obtain an agreement preserving the right to seek indemnification did not prevent recovery when the party seeking indemnification denied liability and demanded that the other insurer defend the underlying action. FFB alleged that INA denied coverage of Kenneth prior to mediation and refused to defend him further despite FFB's request for INA's participation. The complaint also alleges that Kenneth was actively negligent and that Myron was not. Viewing these allegations and the provisions of the attached settlement agreement in the light most favorable to FFB, FFB was not obliged to seek an agreement from INA preserving its indemnification rights.

INA correctly notes that "an insurance company cannot sue its own insured for indemnity," Allstate Insurance Co. v. Fowler, 480 So.2d 1287, 1290 (Fla.1985). However, the allegations in the complaint and its attachments do not establish that Kenneth was an additional insured under Mryon's FFB policy. On the contrary, it appears that any action FFB undertook on behalf of Kenneth after INA withdrew and refused to participate was in an effort to protect its own interest and those of its insuredMyron, not Kennethin negotiating a settlement with the decedent's estate. Therefore, FFB did not have to allege that it disclaimed liability or coverage for Kenneth.
[4] Although there is not a precise test that determines whether equitable subrogation applies in any given case, the Florida Supreme Court in Dade County School Board set forth a general standard that determines whether the doctrine is appropriate:

Equitable subrogation is generally appropriate where: (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) the subrogee paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party. As a result of equitable subrogation, the party discharging the debt stands in the shoes of the person whose claims have been discharged and thus succeeds to the right and priorities of the original creditor.
731 So.2d at 646 (citations omitted).
[5] We find Shook v. Allstate Insurance Co., 498 So.2d 498 (Fla. 4th DCA 1986), instructive. In that case, the insured under an Allstate liability policy was involved in an accident. The injured party sued the insured and demanded the policy limits, but Allstate denied coverage. The injured party and the insured entered into a settlement agreement wherein the insured acknowledged liability to the injured party and agreed to $350,000 in damages. The injured party agreed to accept an assignment of the insured's right of action for breach of contract and bad faith against Allstate and further agreed to forego payment of the settlement amount from the insured. The injured party then instituted a bad faith action against Allstate. The trial court ruled that the injured party could not recover any portion of the settlement agreement because the release obtained by the insured from the injured party relieved Allstate of any liability. The Fourth District Court of Appeal reversed and held:

Here the carrier refused to defend the insured, and appellant entered into settlement negotiations that resulted in an assignment of the insured's claims against its carrier to appellant. The circumstances surrounding the stipulation and agreement for settlement of the claim, and the language of the document demonstrate that it was not the intent of appellant or [the insured] to release any claims that they might have against appellee.
498 So.2d at 500.